## RILEY *vs.* RILEY.

[APPLICATION FOR PROBATE OF WILL.]

1. *Charge referring legal question to jury.*—It is the duty of the court to determine what facts are necessary to establish the legal signing and attestation of a will; consequently, a charge is erroneous which refers the decision of that question to the jury.

2. *What is sufficient signing of will.*—Under the statute of this State, (Code, § 1611,) the testator's name may be signed for him by another person, in his presence, and by his direction; and such signing may be made for him by one of the subscribing witnesses to the will.

3. *What is sufficient attestation.*—But one of the subscribing witnesses cannot sign the name of another subscribing witness, when the latter is able to write, and does not physically participate in the act of signing.

APPEAL from the Probate Court of Monroe.

IN the matter of the last will and testament of William M. Riley, deceased, which was propounded for probate by Mrs. Ann Riley, the decedent's widow, and which, as copied in the bill of exceptions, was in the following words:

"Wm. M. Riley's will, Sept. 11, 1859. I want T. A. Nettles to have the two black mules, Jim and Dick, and two hundred acres of the best land that I have got. And I want Martha O. Nettles to have the boy Lewis, and the *filie* Jane. And I want my wife, Ann Riley, to have all the balance of my property, both personal and real. Written by T. J. Robbins, in presence of Miss Martha O. Nettles and Mrs. Ann Riley.

And Wm. M. Riley,     T. J. ROBBINS, witness.
By request of the above,     W. M. RILEY."

Thomas M. Riley and John Riley, as heirs-at-law and distributees of the decedent, filed the following objections to the probate of this paper: "1st, that said pretended will was not duly executed according to law; 2d, that the same was not executed according to section 1611 of the Code; 3d, that the same was not signed by said W. M. Riley, or by any other person for him, in his presence, and by his direction; 4th, that the same was not attested by two witnesses, who subscribed their names thereto in the presence of the said W. M. Riley, as required by section 1611 of the Code; and, 5th, that said W. M. Riley was of unsound mind, and had not capacity to make a will, at the time said instrument purports to have been executed."

"On the trial of the issue joined on these objections," as the bill of exceptions states, "the proponent offered T. J. Robbins as a witness, who testified, that he wrote the instrument propounded for probate, at the request of said W. M. Riley, and subscribed said Riley's name to it as testator, at his request, in his presence, and by his direction; that he also wrote the name of Martha O.

Nettles as a subscribing witness thereto, at the request of said Riley; that said Martha O. Nettles was present at the time, and did not object to his writing her name, but assented and agreed thereto; that said Riley requested him to write the name of said Martha O. Nettles as a witness to said instrument, saying that he (witness) could write better than she could; that said Martha O. Nettles could read and write very well,—perhaps, better than himself; that he also subscribed his own name as a witness to said instrument; that said instrument was written and made on Sunday, the 11th September, 1859; that said Riley was then sober, and, in witness' opinion, of sound mind; and that he (witness) subscribed his own name as a witness to said will, and also the name of said Martha O. Nettles, in the presence, and at the request of the said testator. The proponent then offered said Martha O. Nettles as a witness, who testified, that she was present when said instrument was written; that said Robbins wrote the whole instrument, together with her name as a subscribing witness, in her presence, at the request of said Riley, and in his presence; that she did not object to her name being so written, but assented and agreed thereto; and that she could read and write very well, but did not write her name as a witness to said instrument, or make her mark thereto. The proponent then offered evidence tending to show, that said Riley was competent to make a will, and, at various times, had made declarations of his intention to dispose of his property in a manner similar to the disposition made in said paper propounded for probate. The contestants objected to this evidence going to the jury, until the said paper propounded for probate was in evidence before them; the court overruled their objection, and they excepted. The proponent then offered said paper in evidence before the jury, as the last will and testament of said Riley, without further proof of its execution or attestation; to which the contestants objected, on the ground that it was not shown to be attested by two witnesses as required by the statute. The court overruled their objection, and allowed

said paper to go to the jury; and the contestants excepted.

" This being all the evidence, the court read to the jury section 1611 of the Code, and instructed them, that it was for them to determine from that section, from the evidence before them, from the authorities read, and from the charge of the court, whether or not the paper offered for probate was executed, attested and subscribed according to said section. To this charge the contestants excepted, and then requested the court to instruct the jury, that unless they believed from the evidence that the paper offered for probate was signed by the testator, or by some one for him, in his presence, and by his direction, and was also attested by two witnesses, who subscribed their names thereto as witnesses, they must find for the contestants. The court refused this charge, and the contestants excepted."

The rulings of the court on the evidence, the charge given, and the refusal of the charge asked, are now assigned as error.

J. W. POSEY, for appellant, cited Lewis v. Lewis, 13 Barb. 17; Horton v. Johnson, 18 Geo. 396; Campbell v. Logan, 2 Bradford's Surrogate Rep. 96; 3 ib. 227; 13 Iredell, 260.

S. J. CUMMING, contra, cited Armstrong v. Armstrong, 29 Ala. 538; 1 Wms. Exrs. 70; 2 Curteis, 330; 6 Grattan, 57; 16 B. Monroe, 102; 3 Ad. & El. (N. S.) 117; 1 Lomax on Exrs. 60–61.

R. W. WALKER, J.—1. The decree in this case must be reversed. It was for the court to determine what facts were necessary to establish the signing and attestation of the will, within the meaning of the Code. But the effect of the charge given was to refer the decision of this legal question to the jury.—Thomason v. Odum, 31 Ala. 108; Wright v. Bolling, 27 Ala. 259.

As, however, the main questions presented by the record will doubtless arise on another trial in the probate

court, we deem it proper to express our views in regard to them at this time.

[2.] In order to constitute a valid signing of a will by the testator, it is not essential that he should write his own name. The statute expressly allows the will to be signed by another for him; and his name, when written by another for him, in his presence, and by his direction, will have the same effect as if written by himself.—Armstrong v. Armstrong, 29 Ala. 541; 1 Wms. Exrs. 69; Code, § 1611. And though Lord Sugden has expressed a contrary opinion, it seems to be settled, that such signing for the testator may be made by a person who is one of the subscribing witnesses to the will.—*In re* Baily, 1 Curteis, 914; Smith v. Harris, 1 Robertson's Eccl. R. 262; 1 Wms. Exrs. 69–70.

[3.] The statute requires the will to be " attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator."—Code, § 1611. The questions we are called upon to decide, are, whether the signature of the witness may be made by another person for him; and if so, whether one witness can subscribe for another witness, who is himself well able to write. While the statute provides, that the will may be signed by "the testator, or some person in his presence, and by his direction," the provision in respect to the attesting witnesses is, that they "must subscribe their names thereto in the presence of the testator." There is certainly much force in the suggestion, that the express allowance of the alternative in one case, with the absence of such allowance in the other, raises a strong inference that the legislature meant to require the actual, personal signature of each witness.

The English statute of frauds (29th Car. II.) required, that the will should be " attested and subscribed, in the presence of the devisor, by three or four witnesses." 1 Jarman on Wills, 112. We have not been able to find any English case, in which it was held, that the signature by another person for a witness is a sufficient subscription by the latter, unless the facts showed a physical participation in the act of signing his name. In Harrison

v. Elvin, 3 Ad. & Ell. (N. S.) 117, the witness whose name was written, and who was himself unable to write, held the pen, while the other witness guided his hand; and this was held a valid subscription. See also, to the same effect, Campbell v. Logan, 2 Bradford's Surr. R. 96–7.

On the other hand, it seems to be settled in the ecclesiastical courts in England, that one of the attesting witnesses cannot subscribe for another. In *In re* White, before the prerogative court, (7 Jurist, 1045,) the will was written for the deceased by a Mr. Culverhouse, and was signed by the deceased, in the presence of Mr. and Mrs. Culverhouse, both being present at the same time; Mr. Culverhouse subscribed his name as a witness, in the presence of the testator and his own wife, and also subscribed the name of his wife as the second witness. Dr. Haggard moved for probate, and submitted, that the rule "*qui facit per alium, facit per se,*" applied. Sir H. Jenner Fust, in passing upon the motion, said: "It is impossible to grant probate of this paper. Why did not Mrs. Culverhouse make her mark at the foot of the will? Motion rejected." We have no access to the volume in which the case just cited is reported, and find the foregoing statement of it in Horton v. Johnson, 18 Geo. 397. The same case is referred to in Campbell v. Logan, 2 Bradf. Surr. R. 96, where it is cited from 2 Notes of Cases, 461. It is there said by the surrogate, that "the judge put the decision on the ground, that the statute did not authorize any person to subscribe the witnesses' names—that the act required both witnesses to subscribe, 'either by signature or mark.'" See, also, 1 Lomax Exrs. 88; 1 Wms. Exrs. p. 79, note (*d.*)

The point is decided in the same way in *In re* Hannah Cope, 2 Rob., 335. In that case, a testatrix, having signed her will, desired M. C. and E. T. to attest; but, as E. T. could not write, the testatrix desired J. J. C., who was also present, to write the name of E. T., which J. J. C. did, but did not sign his own name; *held,* that the paper was not entitled to probate, as E. T. might have made his mark, and that a desire that another should sign could not be construed to be a subscription by E. T.

So it has been held, that the acknowledgment by a witness of a signature previously made, is not a subscription within the meaning of the statute.—Playre v. Scriven, 1 Robertson's Eccl. R. 774. In that case, an attesting witness, on the re-execution of the will, traced over his previous signature with a dry pen; and he was held not to have *subscribed,* but only to have *acknowledged* his signature, which was not sufficient. Sir H. Jenner Fust said: " The witnesses are to *subscribe;* in other words, they are required, I conceive, to do an act which shall be apparent on the face of the will." To *subscribe,* is defined to be, " to set one's hand to a writing," (Pridgen v. Pridgen, 13 Ired. 260,) and this the act requires the witnesses to do.

The rule adopted in the English cases, cited above, that one witness cannot subscribe for another, unless the latter makes his mark to his name as written, or otherwise physically partakes in the act of subscription, is approved of in Campbell v. Logan, (2 Bradf. Surr. R. 96–7,) and in Meehan v. Rourke, (*ib.* 392.) In the former case, the surrogate said : " There is nothing in the statute, authorizing one witness to sign the name of another witness." But he conceded, that where the facts show a physical participation of the witness in the act of signing his name, this is a sufficient compliance with the statute. In Meehan v. Rourke, *supra,* it is said: "The statute of 1 Vic. c. 26 requires the witnesses to ' attest ' and ' subscribe ' the will; and this, it has been decided, may be done by signature or mark; but the witness must, in either case, partake in the physical act of subscribing."

The English rule has also been followed by the supreme court of Georgia. Where a will was subscribed in the presence of the testator, by two witnesses, each for himself, and one of them for a third person, all being present at the same time, it was held, that this was an insufficient attestation under the statute of frauds. The third witness, who could not write, should have made his mark. Horton v. Johnson, 18 Geo. 396. See, further, Dayton on Surrogates, 99–101, and notes.

A different rule has been adopted in Virginia and Ken-

Riley v. Riley.

tucky. In both of those States, it is held, that where the name of one witness is signed by another, at the request of the former, this is a valid subscription, although the witness whose name is thus signed does not make a mark, or otherwise partake in the act of signature.—Upchurch v. Upchurch, 16 B. Monroe, 102; Jesse v. Parker, 6 Gratt. 57. In this latter case, the attestation was held good, although it was shown that the witness whose name was signed by another was able to write.

Without now saying whether an actual physical participation of the witness in the act of signing is, in all cases, essential to a valid subscription of his name, we are not willing to go so far as to hold, that one subscribing witness may sign for another, *who is himself well able to write*, and who does not in any way join in the physical act of subscription. Whatever may be the rule in reference to witnesses who are not able to write, we think, that where a witness is himself well able to write, the subscription of his name by another subscribing witness ought not to be deemed a compliance with the statute.

The evidence set out in the record shows, that the will was written and signed for the testator by one Robbins, who subscribed his own name as a witness, and also the name of the other witness; the latter not partaking, otherwise than by a simple assent, in the act of signature, although she " could read and write very well; perhaps, better than Robbins himself." To hold that these facts amounted to a valid execution and attestation of the will, would certainly weaken the safeguards against frauds and forgeries, which it was the purpose of the statute to provide. It is manifest that the signatures of the witnesses, written by themselves, furnish a reliable foundation for those legal presumptions in favor of the due execution of a will, which arise upon proof of the handwriting of the witnesses, when they are dead or out of the State. We think we consult sound public policy in deciding, that one of the subscribing witnesses to a will cannot sign the name of another who is himself well able to write, and who does not physically participate in the act of signing.

Decree reversed, and cause remanded.