ADAMS, Justice.
This appeal is from the denial of a petition to probate a will in a will contest removed to the Circuit Court of Randolph County. At a hearing without a jury, the trial judge found that the purported second witness to the will did not intend his signature to be that of an attesting witness. Proponents and contestants of the will are the nieces and nephews of the would-be testatrix, Bernice Elder, who died in August of 1979.
*16 On August 28, 1979, Joe Tom Burns, District Judge of Randolph County and a former practicing attorney in Wedowee, Alabama, visited Mrs. Elder’s home to discuss business matters. Judge Burns had served as guardian to Mrs. Elder’s son, who had recently died. It is unclear whether Mrs. Elder or her niece, Willie Belle Hargett, invited Judge Burns, but both were there when he arrived. A discussion arose concerning the need of Mrs. Elder to make a will. Judge Burns informed Mrs. Elder that he was a judge and could not ethically write a will for her, but he agreed to make some notes of her intentions and give these to an attorney who would then prepare her will.
Mrs. Elder dictated her testamentary intentions to Judge Burns, which he penned on a piece of note paper entitled “Who Called At Home.” She then insisted, over his objection, that he serve as executor of her estate. At this point, Judge Burns wrote “Joe T. Burns Executor” immediately following Mrs. Elder’s bequests. The paper was passed to Mrs. Elder, who signed it below the writing “Joe T. Burns Executor.” And, finally, Mrs. Hargett took the paper and signed it below Mrs. Elder’s signature. Mrs. Hargett also wrote her address and phone number below her name and the word “witness” above her name. All three participants were present during this entire procedure and witnessed all of the writings on the note paper.
Judge Burns then took the notes to S. Sanford Holliday, a practicing attorney, who prepared a will which contained the same bequests as dictated to Judge Burns. However, following a discussion with Judge Burns, Holliday made some additions to the will, such as the clause, “I intentionally make no provisions for my other nieces and nephews.” Mrs. Elder died a few days after her dictation to Judge Burns and before the will prepared by Holliday was executed.
The page of notes prepared by Judge Burns was subsequently submitted for probate; its proponents contended it constituted a validly executed will for Mrs. Elder. At a hearing, Judge Burns and Mrs. Har-gett testified to the effect that Mrs. Elder did not intend the notes to be her last will and testament, but merely sought to provide the drafting attorney information necessary to prepare her will. Judge Burns further testified that he wanted Mrs. Elder’s signature on the notes “So I could take it to somebody and let them know that she wanted it done like that instead of me wanting it done like that.” Other witnesses testified that Mrs. Elder expressed to them, following her meeting with Judge Burns and Mrs. Hargett, that she had made a will.
Following the hearing, the trial court found that Mrs. Elder had intended the notes to be her will and that her signature thereon was sufficient to give the notes the legal effect of a will. The court further found that the signature of Mrs. Hargett was sufficient to satisfy the requirement of one subscribing witness, leaving the sole issue of whether Judge Burns was the required second subscribing witness. Following briefs and arguments on this issue, the trial court denied probate, stating in its decree:
After considering the evidence, the Court finds that the alleged signature of Joe T. Burns as an attesting witness was not affixed to said alleged will with the intent to witness a will; that Joe T. Burns did not intend to be a witness to the execution of a will; and that Joe T. Burns, in putting his name on the alleged will, did not intend that his name be his signature. The Court further finds that Joe T. Burns did not have the requisite animus testandi to be a witness to the alleged will.
The sole issue on this appeal is whether the subscribing witness to a will must have an intent to attest the document for the will to be valid.
Appellants contend that no mental element is mandated by the attestation requirement of Code 1975, § 43-1-30, viz.:
No will is effectual to pass real or personal property, except as otherwise provided in this article, unless the same is in writing signed by the testator or some person in his presence, and by his di *17 rection, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator. [Emphasis added.]
We disagree.
“The purpose of this requirement is to remove uncertainty as to the execution of wills and safeguard testators against frauds and impositions. Elston v. Price, 210 Ala. 579, 98 So. 573 (1923); Riley v. Riley, 36 Ala. 496 (1860).” Culver v. King, 362 So.2d 221, 222 (Ala.1978). In addressing the problem of the location of the witness’s signature on the will, this Court observed: “[T]o ‘subscribe’ as used in the statute was not intended to be used in its literal, primary sense, but in its broader meaning to attest by signing the witness’ name as an act done with the intention of his witnessing the execution of the will.” Hughes v. Merchants National Bank of Mobile, 256 Ala. 88, 96, 53 So.2d 386 (1951) (Emphasis added).
The intention of a witness was also a key factor in a case somewhat similar to the instant one. In Elston v. Price, 210 Ala. 579, 98 So. 573 (1923), the would-be testatrix signed a document which she did intend to be a will, and one witness signed for the purpose of attestation. At the alleged execution of the will, Dr. B. F. Caffey signed a separate piece of paper for the purpose of certifying the would-be testatrix’s mental capacity. Although Dr. Caffey was present during the execution of the will and witnessed the other signatures, this Court held:
[T]he essential thing is that by the signature the witness meant to affirm the deceased executed the will in his presence. From the undisputed proof in this case this cannot here be said. ... Dr. Caffey was not requested to sign this instrument as a subscribing witness. He was there for the purpose of certifying as to the sanity of the testatrix.... He fully met the purposes of his visit by the execution of the certificate as to sanity, and we think it quite clear that his signature to the certificate under the circumstances here shown, cannot upon any reasonable grounds be construed to the effect that Dr. Caffey meant thereby to affirm that the deceased executed the will in his presence.
210 Ala. at 581, 98 So. 573 (Emphasis added).
In the instant case, Judge Burns visited Mrs. Elder for the purpose of taking notes that would later be used to prepare her will. The writing of his name as executor was merely part of the information to be passed on to the drafting attorney. Under these circumstances, it does not appear that Judge Burns meant to affirm an execution of Mrs. Elder’s will.
We have found no recent case addressing a fact situation similar to the instant one. However, the facts of Snelgrove v. Snelgrove, 4 S.C. Eq. (4 Des.) 274 (1812), are directly on point and its rationale appropriate. There, the proponents of the will claimed that a Mr. Cleary, who had penned the will in the presence and by the direction of the testator, should be deemed an attesting witness because he had written his name in the will as executor. The South Carolina court said:
It is evident that the testator did not look upon or consider Mr. Cleary as a subscribing witness to his will. He called three others to perform that function. He employed Mr. Cleary as his amanuensis. And the appearance of Mr. Cleary’s name on the face of the will is accidental. He chose to name him one of his executors; and of course Mr. Cleary in writing the names of the executors wrote his own name. But I cannot consider this as attesting and subscribing the will as a witness within the meaning of the statute .... I cannot consider the accidental circumstances, which placed Mr. Cleary’s name in his own hand writing on the face of the will as executor, in the presence of the testator, and the accidental circumstance of the testator’s afterwards signing in his presence, as constituting him a subscribing and attesting witness.
4 S.C. Eq. (4 Des.) at 283-84.
An attesting witness need not know the document he attests is a will. Barksdale v. Pendergrass, 294 Ala. 526, 319 So.2d *18 267 (1975), and Fulks v. Green, 246 Ala. 392, 20 So.2d 787 (1945). From this rule, appellant argues that a witness need not have any intent to witness the document. This does not necessarily follow. In each of these cases, there was at least an intent to witness some document, whether it be a will or not. This minimal intent requirement is still generally recognized.
Although a will may be attested validly in jurisdictions in which publication is not required notwithstanding that the witness is not aware that the instrument which he subscribes is a will, it is essential to the effectiveness of his attestation that he act with intent to attest the instrument. He must sign with the intention of performing the act necessary to become a witness to the execution of the instrument. It is, however, the intent manifested by the circumstances under which the witness signs, rather than his own concept of the purpose for which his signature is required, which is determinative.
79 Am.Jur.2d Wills § 267 (1975) (footnotes omitted). See Page on Wills § 19.129 (rev. ed. 1960). In the instant case, the evidence indicates that Judge Burns, by his signature, sought to inform the drafting attorney of whom Mrs. Elder desired to be the executor of her will. Thus, the trial court’s finding that there was no intent to witness anything at all is amply supported by the evidence.
As a leading authority on wills has stated:
Regardless of what it is that is attested, the witnesses must intend to act as witnesses, or the will is not valid. The mere presence of persons during the performance of the acts required by the statute, coupled with the fact that they sign the will, is not sufficient unless the witnesses have the requisite animus attestandi.
T. Atkinson, Handbook of the Law of Wills § 69 (2d ed. 1953) (footnote omitted).
We hold that an attesting witness must possess, at the minimum, an intent to witness some document. In denying the petition to probate the will, the trial court correctly considered Judge Burns’s intent in placing his name on the notes, although it is not necessary that a witness intend to attest a will per se.
AFFIRMED.
TORBERT, C. J., and FAULKNER, JONES and EMBRY, JJ., concur.