SELLERS, Justice.
Janice Pickens appeals from the order of the Elmore Probate Court denying the admission to probate of a will on the basis that the will was not signed by at least two witnesses as required by § 43-8-131, Ala. Code 1975. We reverse and remand.
*36 I. Facts
Donald Harrison Fenn died on June 27, 2016. Fenn left a will, purportedly executed by him on November 24, 2015, leaving all of his property to Pickens and naming her as his personal representative.[1]
On July 6, 2016, Jackson B. Dismukes, one of Fenn's friends, filed a petition for letters of administration, asserting that Fenn had died with assets in Alabama but that he had no will. On that same day, the probate court granted Dismukes's petition and issued him letters of administration for Fenn's estate.
On July 7, 2016, Pickens filed a petition seeking to probate the will purportedly executed by Fenn. Pickens further moved the probate court to revoke the letters of administration it had issued to Dismukes. Dismukes challenged the admission of the will to probate on the basis that the will did not contain the signature of a second witness as required by § 43-8-131.
On October 31, 2016, the probate court conducted a bench trial for the purpose of determining whether the will could be admitted to probate and, more specifically, whether the will complied with the requirements of § 43-8-131. The will was in writing; it was signed by Fenn; it contained the signature of one attesting witness, Tracy Stroud Causey; and it contained the signature and seal of Janet M. Ingram, a duly commissioned notary public. It was Pickens's position at the hearing that even though Ingram signed the notarization of Fenn's and Causey's signatures in her capacity as a notary public, her signature on the will satisfied the statutory requirements of a witness under § 43-8-131. The probate court heard the testimony of both Causey and Ingram. Ingram testified that, on November 24, 2015, Fenn came into the law office where she was working and inquired whether she would notarize "something" for him. Ingram stated that she took Fenn to her office, where he handed her a document. Ingram testified that she did not know that the document was a will but that she did notice that the document required the signature of a witness; accordingly, Ingram called Causey to her office to witness Fenn sign the document. Ingram admitted that the document contained a signature line for a second attesting witness; however, she stated that she did not recall seeing the additional signature line at the time she had Causey sign the document as a witness. Finally, Ingram testified that she did not sign the document as a witness but, rather, in her capacity as a notary public. Causey testified that she witnessed Fenn sign the document and that she witnessed Ingram notarize the document.
After hearing the testimony, the probate court entered an order refusing to admit the will to probate, on the basis that Ingram had signed the will in her capacity as a notary, not as a witness, and that, therefore, the requirement of § 43-8-131 calling for two witnesses to a will was not satisfied. Pickens appealed. See § 12-22-21, Ala. Code 1975.
II. Standard of Review
"This Court reviews de novo [a probate] court's interpretation of a statute, because only a question of law is presented." Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala. 2003).
*37 III. Discussion
A. The Will
Pages two and three of the will containing the signatures of Fenn, Causey, and Ingram read as follows:
"IN WITNESS WHEREOF, I, Donald Harrison Fenn, the Testator, sign my name to this instrument as my last will and testament this 24 day of Nov. 201 5, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my last will and testament, and that I sign it willingly, and that I execute it as my free and voluntary act and deed for the purposes therein expressed, and that I am at least 19 years of age, of sound mind, and under no constraint, duress, fraud [or] undue influence.
"[/s/ Donald Harrison Fenn].
"We, _________________________ and Tracy Stroud Causey, the witnesses, sign our names to this instrument, and, being first duly sworn, do each hereby declare to the undersigned authority that Donald Harrison Fenn, the Testator, signed and executed this instrument as his last will and testament and that he signed it willingly, and that each of us, in the presence and hearing of the Testator and each other, hereby signs this will as witness to the Testator's signing, and that to the best of each of our knowledge the Testator is at least 19 years of age, of sound mind and under no constraint, duress, fraud or undue influence.
"[Signature of Tracy Stroud Causey ]
"having an address at
"----Main Street Millbrook, AL 36054
"_________________________
"having an address at
"_________________________
"STATE OF ALABAMA
"COUNTY OF ELMORE
"Subscribed, sworn and acknowledge[d] before me by the said Donald Harrison Fenn, Testator, and subscribed and sworn to before me by the said Donald Fenn and Tracy Causey as witness, this 24th day of Nov. 2015.
"/s/Janet M. Ingram
"Notary Public
"My commission expires: [seal]."
B. Analysis
Section 43-8-131 governs the formal requirements for the execution of a will:
"Except as provided within section 43-8-135, [Ala. Code 1975,] every will shall be in writing signed by the testator or in the testator's name by some other person in the testator's presence and by his direction, and shall be signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will."[2]
(Emphasis added.) The statute requires (1) that the will be in writing and (2) that it be signed by the testator (or by someone in the testator's presence and at his or her direction). In this case, it is undisputed *38 that the will is in writing and that it is signed by Fenn. Therefore, the first two requirements of the statute are satisfied. The statute also requires that a will be signed by at least two persons who witnessed the testator performing one of three acts: signing the will, acknowledging the document as his will, or acknowledging his signature on the will. In this case, Causey signed as an attesting witness and Ingram signed in her capacity as a notary public. Whether a notary who signs a will in his or her capacity as a notary can be considered a valid witness to a will under § 43-8-131 is a question of first impression for this Court.
We begin our analysis by noting that "[t]he polestar of statutory construction is to ascertain and give effect to the Legislature's intent in enacting a statute." Ex parte Berryhill, 801 So.2d 7, 9-10 (Ala. 2001). In this case, the Commentary to § 43-8-131 makes clear the intent of the statute, which is to validate wills meeting the minimum formalities of the statute:
"The formalities for execution of a witnessed will have been reduced to a minimum. Execution under this section normally would be accomplished by signature of the testator and of two witnesses; each of the persons signing as witnesses must 'witness' any of the following: the signing of the will by the testator, an acknowledgment by the testator that the signature is his, or an acknowledgment by the testator that the document is his will. ... There is no requirement that the testator publish the document as his will, or that he request the witnesses to sign, or that the witnesses sign in the presence of the testator or of each other. The testator may sign the will outside the presence of the witnesses, if he later acknowledges to the witnesses that the signature is his or that the document is his will, and they sign as witnesses. There is no requirement that the testator's signature be at the end of the will; thus, if he writes his name in the body of the will and intends it to be his signature, this could satisfy the statute. The intent is to validate wills which meet the minimum formalities of the statute."[3]
(Emphasis added.) It is also noteworthy to add that, when the validity of a will is being challenged, the trial court or, in this case, the probate court, is guided by the following general principle: "Instead of indulging suspicion or conjecture to destroy the validity of wills, the courts are bound to support them against mere suspicion or conjecture; bound to support them, when any theory or hypothesis maintaining them, is as probable as that which is suggested to defeat them." Barnewall v. Murrell, 108 Ala. 366, 388, 18 So. 831, 841 (1895). Lastly, the purpose of requiring the signature of two witnesses "is to remove uncertainty as to the execution of wills and safeguard testators against frauds and impositions." Culver v. King, 362 So.2d 221, 222 (Ala. 1978).
With these above principles in mind, we now address the issue whether Ingram's signature on the will in her capacity as a notary public can constitute the signature of a person witnessing the execution of the will for purposes of § 43-8-131. In resolving this issue, this Court need look no further than the plain language of the statute. It is well settled that
"[w]ords used in a statute must be given their natural, plain, ordinary, and commonly *39 understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992). Section 43-8-131 is not ambiguous-it states that the will shall be signed by at least two "persons" each of whom "witnessed" either "the signing or the testator's acknowledgment of the signature or of the will." Section 43-8-134, Ala. Code 1975, states that "[a]ny person generally competent to be a witness may act as a witness to a will." (Emphasis added.) The term "persons" as used in § 43-8-131 is a very broad, rather than restrictive, term. There is simply nothing in the statute that would prohibit a notary public from serving as a witness. Indeed, the fact that Ingram signed the will in her capacity as a notary public is immaterial to her qualification to serve as a witness to the will because § 43-8-131 does not require that the signatures of the testator or the witnesses be notarized. The important fact here is not the capacity in which Ingram executed the document, i.e., as a notary public, but rather that she observed Fenn's signing of the document and affixed her signature thereto. We see no reason to exclude Ingram as a witness simply because she signed in her official capacity as a notary public.[4] Admittedly, Ingram did not testify that she was signing as a witness. Rather, she testified that Fenn asked her to "notarize something." Nevertheless, although Ingram may not have intended to act as an official witness, she nonetheless observed Fenn sign the document and then, by signing, accomplished the purpose and statutory dictates of § 43-8-131. To conclude otherwise would frustrate rather than further the *40 intent of the statute, which, as previously indicated, is to validate wills that meet the minimum formalities of the statute. Moreover, our holding is consistent with the public policy of this State in carrying out the intent of the testator and, more specifically, adhering to the presumption that Fenn, who possessed a will and sought to have it notarized, did not intend to die intestate. Ide v. Harris, 261 Ala. 484, 75 So.2d 129 (1954).
IV. Conclusion
We conclude that Ingram's signature, albeit in her capacity as a notary public, is sufficient to meet the statutory requirements of a witness under § 43-8-131, Ala. Code 1975. Accordingly, we reverse the order of the probate court and remand this matter to that court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Parker, Main, Wise, and Bryan, JJ., concur.
Murdock, J., concurs in the rationale in part and concurs in the result.
Shaw, J., concurs in the result.
MURDOCK, Justice (concurring in the rationale in part and concurring in the result).
I concur in the main opinion except for the manner in which Weaver v. Grant, 394 So.2d 15 (Ala. 1981), and the now repealed § 43-1-130, Ala. Code 1975, are distinguished at the outset of footnote 4. See 251 So.3d at 39 n.4. It appears to me that Janet M. Ingram's notarization of the will would have been sufficient as a witnessing of the same under § 43-1-130. I would distinguish Weaver not on any differences between the language of § 43-1-130 and the language of the current statute, § 43-8-131, Ala. Code 1975, but based on the fact, as the Court noted, that the party whose witnessing was in question in Weaver had simply written down his name as proposed executor as part of "notes" he prepared for a friend "to ... pass[ ] on to [a] drafting attorney" who was to prepare the friend's will, there being no intention for the writing of his name to constitute any sort of "witnessing" of some instrument. 394 So.2d at 17.

Pickens was a certified nurse assistant; she had known Fenn for approximately nine years; and she had moved into his house to take care of him during his illness. At the time of his death, Fenn was survived by two adult daughters-Elizabeth Ann DeBardelaben of Texas and Sarah E. Whitby of Pennsylvania. In March 1984, Fenn had allowed his former wife's second husband to adopt Sarah.

Section 43-8-132, Ala. Code 1975, governs the execution of a self-proved will. Pickens concedes that the will does not meet the requirements for a self-proved will; thus, the issue whether the will is self-proving is not before us. See Ex parte Ricks, 164 So.3d 1141, 1144 n. 2 (Ala. 2014) ("Self-proving wills are 'self-proved, by the acknowledgment thereof by the testator and the affidavits of the witnesses, each made before an officer authorized to administer oaths under the laws of the state where the acknowledgment occurs and evidenced by the officer's certificate, under the official seal, attached or annexed to the will.' § 43-8-132, Ala. Code 1975." (Emphasis omitted.)

Under the previous statute governing the execution of wills, § 43-1-130, Ala. Code 1975 (repealed in 1982), a will was required, among other things, to be "'attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator.'" See Anderson v. Griggs, 402 So.2d 904, 907 (Ala. 1981) (quoting statute).

We note that Dismukes cites Weaver v. Grant, 394 So.2d 15 (Ala. 1981), for the proposition that a person witnessing a will must posses an intent to act as a witness under § 43-8-131. Weaver, however, was decided in 1981, at which time § 43-1-130 (repealed in 1982) was in effect. Section 43-8-131, a part of the new probate code, reduces the formalities for the execution of a will, and requires only that the will "shall be signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will." Accordingly, under § 43-8-131, the intent of a person witnessing a will is not essential to the validity of its execution. See also, e.g., Brown v. Traylor, 210 S.W.3d 648, 672 (Tex. App. 2006) ("A notary may be considered, and can be competent to be, a subscribing witness to a will."); In re Estate of Teal, 135 S.W.3d 87, 91 (Tex. App. 2002) ("We now hold that, under the facts in this case, the notary, although she did not intend to sign as a subscribing witness, did in fact serve as a subscribing witness. ... Because there is no requirement that a will be notarized, [the notary's] signature served no purpose other than as a witness."); Simpson v. Williamson, 611 So.2d 544, 546 (Fla. Dist. Ct. App. 1992) ("It is well established that the execution of a will may be valid, even though a required witness signs in a capacity other than that of a witness."); Payne v. Payne, 54 Ark. 415, 415, 16 S.W. 1, 1-2 (1891) ("The evidence shows ... a literal compliance with the law in every respect, except that the testator asked [the justice of the peace] to put his official certificate to the will, instead of formally asking him to sign it as a witness. ... [W]e can see no reason, in law or justice, why the effect of an ordinary attestation should be denied to it. Whether testifying through his certificate, or as a witness in a probate proceeding, [the justice of the peace] was asked to bear witness to the fact that the writing had been subscribed by and was the will of the testator. That is the ordinary office of a witness, and as such [the justice of the peace] signed the will."); and Franks v. Chapman, 64 Tex. 159, 161 (1885) ("The fact that ... the clerk of the county court, when called upon by [the testator] to witness the will, attached thereto his official certificate of the acknowledgment of the due execution of the will by the testator, does not affect the validity of his signature to the will as a witness.").